UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CHARLES MARSHALL SMITH, a/k/a "Blue",<br><br>　　　　　Defendant. | 4:17-CR-40100-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Charles Marshall Smith, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 138. Plaintiff, the United States of America, opposes the motion. Docket 150. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On November 27, 2018, Smith pleaded guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1). Dockets 92, 98. The court sentenced Smith to 262 months in custody followed by ten years of supervised release. Docket 122 at 2; Docket 123 at 2-3. His projected date of release is April 14, 2036. Docket 140 at 106.

Smith is incarcerated at FCI Gilmer, a medium security correctional institution with an adjacent minimum security satellite camp in Glenville, West Virginia. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 18, 2021). The total population at FCI Gilmer is 1,543 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gil/ (last

visited May 18, 2021).

Smith is 39 years old. https://www.bop.gov/inmateloc/ (last visited May 18, 2021). Smith alleges he suffers from obesity and hypertension. Docket 138 at 3-4; Docket 138-3 at 5-6; Docket 145 at 1. He further asserts that his participation in various programs demonstrates that he is a good candidate for release. Docket 146 at 8-9.

On January 26, 2021, Smith completed an Inmate Request for Compassionate Release Consideration. Docket 138-3 at 5. Smith requested he be considered for compassionate release due to his medical conditions and COVID-19. *Id.* The warden denied his request on February 12, 2021. *Id.* at 3. On March 12, 2021, Smith filed a pro se motion with the court for relief under the First Step Act. Docket 138. Smith's counsel subsequently filed a supplement to his pro se motion. Docket 146.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). But Congress made changes to the law through the First Step Act (FSA), which permit inmates in certain circumstances to file motions with the court seeking compassionate release. *See* Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). When considering whether to grant a motion for compassionate release the court must consider the § 3553(a) sentencing factors

and the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Smith argues that the risks posed by the COVID-19 pandemic together with his medical conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 138 at 1-2, 4; Docket 145 at 1, 7-19. Smith requests a reduced sentence of time served and a period of home confinement as a condition of supervised release. Docket 145 at 1.

I. **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Smith asserts he made a request for compassionate release to the warden and 30 days have elapsed since the request was made. Docket 138-3 at 3, 5. Because the request was denied, the court will presume Smith satisfied the administrative exhaustion requirement.

II. **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what

3

should be considered "extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Bureau of Prisons (BOP). USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B1.13, Application Notes 1(A)-(D) to guide its analysis. *See e.g., Muhs*, 2021 WL 534517, at *3.

Smith contends that the ongoing COVID-19 pandemic in combination

4

with his health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 138 at 4; Docket 145 at 7-19. The court concludes Smith's motion does not satisfy any of the categories identified by the Sentencing Commission in USSG § 1B1.13, comment notes 1(A)-(C). He does not have a terminal illness or a debilitating physical or mental health condition. Smith is not of advanced age and he is not experiencing compelling family circumstances. Moreover, assuming the court's discretion to consider compassionate release under the "catch-all category" is at least as broad as the policy statement of the Sentencing Commission, Smith has failed to show his reasons for release rise to the level of other "extraordinary and compelling reasons" justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n. 1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated May 13, 2021) (last visited

May 17, 2021). The CDC states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, down syndrome, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, liver disease, obesity, being overweight, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, history of stroke or cerebrovascular disease, and substance abuse disorders. *Id.*

The court has reviewed the medical records submitted in this case. Smith suffers from hypertension. Docket 140 at 33. On February 19, 2020, Smith weighed 236 pounds and was 73 inches tall. Docket 332 at 74-75. Based on his weight and height, his body mass index (BMI) is 31.1, which falls in the obese category. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_ calculator/bmi _calculator.html (last visited on May 17, 2021).

Smith's obesity condition can increase the risk of severe illness from COVID-19. He has been counseled by a medical provider regarding exercise, diet, and his weight. Docket 140 at 32. During a clinical visit with a medical provider, Smith informed his doctor that he had been partaking in exercise and had been losing weight. *Id.* at 68.

Smith's hypertension is also listed as a medical condition that can increase the risk of severe illness from COVID-19. Smith is prescribed amlodipine and hydrochlorothiazide for his hypertension. Docket 140 at 5, 86. According to his medical records, Smith has not been fully compliant with his medication. *Id.* at 68. He has been counseled on his sodium intake and his compliance with his medical treatments. *Id.* 5, 69.

Although Smith does suffer from medical conditions recognized by the CDC, the court has required a more particularized showing of risk of serious illness from COVID-19 when evaluating compassionate release motions. Smith's obesity and hypertension do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. And, in fact, the current status of the COVID-19 pandemic is itself losing pervasiveness. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP COVID-19 Modified Operations Plan*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 16, 2021). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions regarding potential inmate home confinement in response to the COVID-19 pandemic,* https://www.bop.gov/coronavirus/faq.jsp (last visited

7

May 19, 2021). Since March 26, 2020 to the present, 25,607 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

As of May 19, 2021, there are no active COVID-19 cases among inmates at FCI Gilmer. *BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited May 19, 2021). FCI Gilmer has reported one inmate death from COVID-19, and 297 inmates and 70 staff have recovered from COVID-19. *Id.* The reported information demonstrates COVID-19 was widespread, but not devastating. This persuades the court that FCI Gilmer has acted appropriately to treat inmates who contracted COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this late stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited May 18, 2021). As of May 19, 2021, 175,331 doses had been administered systemwide. *Id.* At FCI Gilmer, 140 staff and 942 inmates have been fully inoculated as of May 19, 2021. *See Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/ (last visited May 19, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so. *Id.* On April 15, 2021,

8

the Director of the BOP testified to the Senate Judiciary Committee and estimated the BOP will have offered a vaccine to every inmate in its custody by the middle of May 2021. *Statement of Michael D. Carvajal Director Fed. Bureau of Prisons,* Comm. on the Judiciary, https://www.judiciary.senate.gov/download/michael-carvajal-testimony- (last visited May 4, 2021). On March 1, 2021, Smith refused a COVID-19 vaccine. Docket 140 at 100-01. Because Smith declined the opportunity to be vaccinated in order to protect himself from COVID-19, the court concludes that Smith is not overly concerned about a risk of infection.

These efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of May 18, 2021, the BOP reported only 73 federal inmates have confirmed positive test results for COVID-19 nationwide. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited May 18, 2021). There are currently over 128,000 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Smith's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.    Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). The court is not convinced that

9

"extraordinary and compelling reasons" exists to release Smith from custody early.

### III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors underscore the point that compassionate release is not warranted. Smith's conviction stems from possession with intent to distribute a controlled substance. At least 1,316 kilograms of controlled substances were attributed to the defendant. Docket 118 ¶ 15. Smith utilized the alias "Blue" to sell heroine. *Id.* ¶ 7. Various individuals reported obtaining either heroin or cocaine from a man named "Blue". *Id.* ¶¶ 8-10. A traffic stop conducted on the vehicle driven by Smith produced 12.5 ounces of cocaine. *Id.* ¶ 12. Following the traffic stop, a search warrant was executed at his girlfriend's residence that found 327.9 grams of "crack" cocaine, 4.4 grams cocaine powder, 73.4 grams of heroin, 18.2 grams of suspected ecstasy, and various firearms. *Id.* ¶ 10, 13. Smith later admitted to officers that the narcotics and firearms found at his girlfriend's residence belonged to him and were used for drug trafficking. *Id.* ¶ 14.

The presentence investigation report (PSR) calculated the total offense level as 37. *Id.* ¶ 29. Smith had 21 scorable criminal history points resulting in criminal history category VI. *Id.* ¶ 53. The advisory guideline range for his sentence was 360 months to life in custody. *Id.* ¶ 110. The court sentenced Smith below his guideline range to 262 months in custody. Docket 123 at 2. To date, Smith has served approximately 18.9% of his statutory term. Docket 140 at 107. He is eligible for home detention on October 14, 2035. *Id.* at 106.

The court commends Smith for his participation in educational programs while in custody. The court encourages his continued progress. Nonetheless, after careful consideration, the court concludes Smith's sentence of 262 months in custody continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Smith has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for compassionate release under the First Step Act (Docket 138) is denied.

Dated May 19, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE